IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT C. GOSS, et al.          :
                                :
                                :
     v.                         :     CCB-12-2680
                                :
                                :
BANK OF AMERICA, N.A.           :
                                :

## MEMORANDUM

Plaintiffs Robert and Shirley Goss, filed this action against defendant Bank of America, N.A. ("BANA"), as successor by merger to BAC Home Loans Servicing, LP, alleging that BANA's apparent failure to process a mortgage modification, after the servicer informed the Gosses it would assist them in seeking a change to their mortgage terms, is grounds for a variety of state law claims. BANA has filed a motion to dismiss the plaintiffs' complaint. For the reasons set forth below, BANA's motion will be granted.

## BACKGROUND

The Home Affordable Modification Program ("HAMP") was established by the Secretary of the Treasury under authority granted in the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765, legislation that included the Troubled Asset Relief Program ("TARP") and other measures designed to mitigate the 2008 financial crisis. *See Stagikas v. Saxon Mortg. Services, Inc.*, 795 F. Supp. 2d 129, 132-33 (D. Mass. 2011). As the plaintiffs detail in their complaint, under HAMP, participating mortgage servicers are promised incentives by the federal government if they process mortgage modification applications under guidelines promulgated by the U.S. Department of Treasury. Servicers agree to enter into Trial Period Plans ("TPPs") with eligible homeowners that may lead to a permanent modification of their mortgage

1

terms to avoid foreclosure. (*See* Compl., ECF No. 1, ¶¶ 26-27); *Stagikas*, 795 F. Supp. 2d at 133. If homeowners meet the HAMP eligibility criteria, they are entitled to a TPP—the guidelines leave no discretion to the servicer to deny eligible applicants. (Compl. ¶ 27.4.) Once a homeowner adheres to the terms of a TPP, "the servicer must, with few exceptions, offer to make the TPP a permanent modification." (*Id.* ¶ 27.5.)

The Gosses financed their home in Pasadena, Maryland, with a mortgage serviced by BANA that was recorded in 2007. (*Id.* ¶ 22.) In December 2010, according to the complaint, due to unemployment and other circumstances, the Gosses fell behind on their mortgage payments. (*Id.* ¶ 24.) On June 21, 2011, in response to an inquiry made on behalf of the Gosses by the office of U.S. Senator Ben Cardin and the Office of the Comptroller of the Currency, BANA's Office of the CEO and President sent a letter to the Gosses that stated, in relevant part:

> I am pleased to inform you that Bank of America referred your account to our Home Retention Division. Workout Negotiator Kim Shelton has been assigned to your account to assist your request in being reviewed for the HAMP program and other workout options. By the time you receive this letter, Ms. Shelton may have already contacted you, but in the event she has not, we recommend you contact her . . . to discuss [BANA's] review for possible workout options available. . . . Please note that workout assistance is not guaranteed and is dependent on several factors.

(Compl. Ex. 4, ECF No. 1-6.) After submitting a HAMP application through a third party and receiving no response, the Gosses submitted a HAMP application directly on May 14, 2012. (Compl. ¶ 29-30.)

The Gosses plead, in detail, that they met all of the HAMP eligibility criteria for a TPP and, eventually, a permanent modification. (*Id.* ¶ 33.) Under the HAMP guidelines, based on the Gosses' calculation, the maximum amount of their modified monthly mortgage payment would have been $1,653. (*Id.* ¶ 36.) BANA did, in fact, offer the Gosses what purported to be a TPP under HAMP in a letter on June 8, 2012, that stated: "We are pleased to let you know that your loan has been approved for a loan modification subject to a successful completion of a Trial

Period Plan under terms required by the Federal Housing Authority." (Compl. Ex. 7, ECF No. 1-9). The "TPP," however, only offered to lower the Gosses' monthly mortgage payment to $2,634.67, an amount they could not afford and one that was nearly the same as their regular mortgage payments. (Compl. ¶ 39; Ex. 7.) The Gosses allege that this TPP violated the terms of HAMP and they could not accept it because it would not have improved their circumstances. (Compl. ¶ 39-41.) On August 2, 2012, the day after the purported TPP's acceptance period had lapsed, BANA sent a letter to the Gosses, without explanation, stating: "The workout assistance you have requested is not an option." (Compl. Ex. 8, ECF No. 1-10.)

In light of BANA's failure to offer a valid TPP, the Gosses instituted this action alleging a variety of state law claims. The Gosses allege that BANA had an incentive to avoid a HAMP modification because "a loan in foreclosure generates continually increasing late fees and penalties," but "a successful loan modification *waives* late fees and penalties." (*Id.* ¶ 47.) They allege that they detrimentally relied on BANA's June 21, 2011, letter by devoting resources to BANA's workout offer and by "not attempting to sell the home, simply submitting to foreclosure, or taking legal action sooner," and that this reliance led to damage to their credit scores, increasing liability in penalties and fees, and "severe mental anguish" manifested in physical symptoms. (*Id.* ¶ 4, 47, 52-53.)

## ANALYSIS

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition

3

of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When a homeowner enters into a TPP under HAMP, that agreement may create legally enforceable contractual rights. *See Legore v. OneWest Bank, FSB*, --- F. Supp. 2d ---, 2012 WL 4903087, at *4 (D. Md. Oct. 15, 2012); *Allen v. CitiMortgage, Inc.*, 2011 WL 3425665, at *4-6 (D. Md. Aug. 4, 2011). Where a homeowner has not entered into any agreement under HAMP, however, private plaintiffs have no cause of action to enforce HAMP guidelines on behalf of the federal government or as a third-party beneficiary of the HAMP participation agreement between the federal government and the mortgage servicer. *See, e.g.*, *Bowers v. Bank of America, N.A.*, --- F. Supp. 2d ---, 2012 WL 5941826 (D. Md. Nov. 27, 2012); *Parks v. BAC Home Loan Servicing, LP*, 825 F. Supp. 2d 713, 715-16 (E.D. Va. 2011); *Sheard v. Bank of America, N.A.*, 2012 WL

3025119, at *3 (D. Md. Jul. 23, 2012);[1] *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012) (citing *Astra USA, Inc. v. Santa Clara County, Cal.*, 131 S. Ct. 1342 (2011)).[2] Nevertheless, "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." *Wigod*, 673 F.3d at 581.

Although the Gosses have pointed to a frustrating, troublesome course of conduct by the bank in dealing with the Gosses' requests for a mortgage modification, the Gosses have not stated any actionable claims under Maryland law.

### I.      Maryland Consumer Protection Act and Fraud (Counts I and II)

The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices." Md. Code Ann., Com. Law, § 13-301. The MCPA proscribes fourteen categories of unfair or deceptive practices, including "any . . . [f]alse . . . or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" and "any . . . [f]ailure to state a material fact if the failure deceives or tends to deceive." §§ 13-301(1); (3). To state a claim under the MCPA, "the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *See*

---

[1] Unpublished cases are cited for the soundness of their reasoning, not for their precedential value.
[2] In *Wigod*, 673 F.3d at 559 n.4, the Seventh Circuit explained:
> In *Astra*, the Supreme Court held that health care facilities covered by § 340B of the Public Health Services Act could not sue as third-party beneficiaries of drug price-ceiling contracts between pharmaceutical manufacturers and the government because Congress did not create a private right of action under the Act. . . . Here, too, Congress did not create a private right of action to enforce the HAMP guidelines, and since *Astra*, district courts have correctly applied the Court's decision to foreclose claims by homeowners seeking HAMP modifications as third-party beneficiaries of SPAs.

*Lloyd v. General Motors Corp.*, 916 A.2d 257, 277 (Md. 2007) (citations omitted). Similarly, to bring a common law fraud claim in Maryland, the plaintiffs must show:

> (1) that the defendant made a false representation; (2) that its falsity was either known to the defendant, or the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon it in the full belief as to its truth, and would not have done the thing from which the injury had resulted had not such misrepresentation been made; and (5) that such person actually suffered damage directly resulting from such fraudulent misrepresentation.

*Parker v. Columbia Bank*, 604 A.2d 521, 527 (Md. App. 1992).

The Gosses allege that BANA violated the MCPA by making a series of false and misleading representations to them regarding HAMP, the availability of workout assistance, and the modification they were entitled to under HAMP. (Compl. ¶ 60.) The June 2011 letter they received offering to assist them in seeking a modification may have induced the Gosses to forgo alternative solutions to their mortgage troubles, but the letter itself was not "false" – it did not state definitively that BANA would offer the Gosses a TPP. Even if other statements the Gosses identify in the complaint could be considered false and misleading, the Gosses cannot prove that reliance on any of them caused an actual injury. In particular, the purported "TPP" they received in June 2012 from BANA was, according to the Gosses, deceptive in that it stated it was compliant with HAMP regulations. But, the Gosses rejected that offer and did not rely on BANA's alleged false statement that it was a valid TPP. Similarly, BANA's August 2012 statement that no modification was available did not induce the Gosses to take any action in reliance on that statement. Thus, because the Gosses cannot show they reasonably and detrimentally relied on any of BANA's statements, the Gosses have not stated a valid MCPA or fraud claim.

6

## II. Promissory Estoppel (Count III)

The Gosses' also have failed to state an actionable promissory estoppel claim. "Maryland courts, which disapprove of the term 'promissory estoppel,' have incorporated the *Restatement (Second) on Contracts* to adopt the analogous doctrine of 'detrimental reliance,' a tort that does not sound in fraud." *Jordan v. Alt. Resources Corp.*, 458 F.3d 332, 348 (4th Cir. 2006) (citing *Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996)). "Promissory estoppel offers a vehicle to enforce a promise for which there is no consideration, but the plaintiff nonetheless relied upon the promise to his detriment in circumstances that make it unconscionable not to enforce the promise." *Edell & Assoc., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 440 (4th Cir. 2001). To maintain a claim under promissory estoppel, or "detrimental reliance," the plaintiffs must allege:

> (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel*, 674 A.2d at 532. The only possible basis for such a claim is the June 2011 letter, and that letter did not plausibly include "a clear and definite promise" that BANA would take any action on the Gosses' mortgage. It merely offered to assist them in seeking a modification. Accordingly, BANA's motion to dismiss Count III of the Gosses' complaint will be granted.

## III. Breach of Implied-in-Fact Contract (Count VI)

Under Maryland law, implied contracts, like all contracts, require "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co. of America*, 392 F.3d 114, 123 (4th Cir. 2004). The Gosses have not alleged bargained-for consideration, nor a definite manifestation of mutual assent, sufficient to transform BANA's letter into a contract. *See CTI/DC*, 392 F.3d at 123-24; *Cochran v. Norkunas*, 919 A.2d

700, 708-09 (Md. 2007). As explained above, the June 2011 letter on which the Gosses base their claim did not include a definite promise by BANA to modify the Gosses' loan.

Even if it did, the only consideration the Gosses allege they transferred to BANA in exchange for its alleged promise to process the HAMP application was "the act of providing documentation for the application." (Compl. ¶ 93.) While courts have found that the submission of application materials may contribute to a finding of sufficient consideration to establish contractual rights under a TPP, TPPs are formal written agreements, unequivocally stating an intent to be bound, and are supported by additional consideration. *See Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 352 (D. Mass. 2011) (homeowners who enter into TPP agreements under HAMP are "required to provide documentation of their current income, make legal representations about their personal circumstances, . . . agree to undergo credit counseling if requested to do so . . . [and] could also be required to make payments into a newly established escrow account"); *Allen*, 2011 WL 3425665 at *5-6. In contrast, the letter from BANA to the Gosses was supported only by the submission of the application and was, at most, akin to a "letter of intent" that BANA would enter into a TPP agreement with the Gosses. Even where parties "enter into a binding informal or oral agreement to execute a written contract . . . if the parties contemplate that an agreement between them shall be reduced to writing before it shall become binding and complete, there is no contract until the writing is signed." *Cochran*, 919 A.2d at 711 (quotation omitted). Thus, the Gosses have not alleged a plausible breach of contract claim, and Count VI of their complaint must be dismissed.

## IV. Negligence (Count IV) and Negligent Misrepresentation (Count V)

To state an actionable negligence or negligent misrepresentation claim under Maryland law, the Gosses must first demonstrate that BANA "owed them a duty in tort." *Spaulding*, 2012 WL 3025116 at *4-5 (citing *Jacques v. First Nat'l Bank of Maryland*, 515 A.2d 756, 758 (Md.

1986)); *Parker*, 604 A.2d at 531). "Courts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Kuechler v. Peoples Bank*, 602 F.Supp.2d 625, 633-34 (D. Md. 2009) (quoting *Parker*, 604 A.2d at 532); *Legore*, 2012 WL 4903087 at *5. Here, where the letter and subsequent actions of BANA did not even create an enforceable contract or other nexus between BANA and the Gosses, beyond their mortgage agreement, BANA owed no duty in tort to them in the processing of their HAMP application. Accordingly, Counts IV and V of the Gosses' complaint must be dismissed.

## CONCLUSION

For the reasons stated above, BANA's motion to dismiss the Gosses' complaint will be granted. A separate order follows.

January 8, 2013            /s/
       Date            Catherine C. Blake
                United States District Judge